Watson-Wilson Transportation System, Inc. v. Commissioner.
Watson-Wilson Transp. System, Inc. v. Commissioner
Docket No. 94115.
United States Tax Court
T.C. Memo 1964-261; 1964 Tax Ct. Memo LEXIS 78; 23 T.C.M. (CCH) 1592; T.C.M. (RIA) 64261; October 2, 1964
*78 Held, petitioner has failed to show that respondent erred in determining that certain freight revenues accrued during 1952 and 1953 and should have been reported in those years. William J. Baird, Omaha Nat'l Bank Bldg., Omaha, Neb., for the petitioner. James T. Finlen, Jr., for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: Respondent determined deficiencies in petitioner's income taxes for 1952 and 1953 in the amounts of $585,903.99 and $175,543.03, respectively. A number of issues having been settled by stipulation, there remains for decision only the question of the proper treatment of certain *79 freight revenues, which respondent determined were erroneously reported by petitioner. Findings of Fact Some of the facts have been stipulated and the stipulation of facts, together with the exhibits appended thereto, is incorporated herein by this reference. Petitioner, Watson-Wilson Transportation System, Inc., successor to Watson Bros. Transportation Co., Inc., is a Nebraska corporation with its principal place of business at 1910 Harney Street, Omaha, Nebraska. Petitioner filed Federal income tax returns for the taxable years 1952, 1953 and 1954 with the district director of internal revenue for the district of Nebraska at Omaha, Nebraska. Petitioner maintains its books and records on an accrual basis of accounting, using the calendar year as its taxable year. Petitioner is a motor-truck common carrier of general commodities, operating principally in the southeast, midwest, and west coast areas of the United States. During 1952 and 1953 petitioner operated from 35 or 36 terminals. In its 1952 Federal income tax return, petitioner did not report freight revenues of $105,918.86 involving the period between December 26, 1952, and December 31, 1952, computed as follows: *80 Freight bills reflected on IBM
"Batch Book" for period Decem-
ber 26, 1952, to December 31, 1952,
representing freight income
$345,555.81
Less: Interline payables
64,118.10
Income from freight revenue for
period December 26, 1952, to De-
cember 31, 1952
$281,437.71
Amount reported on return
175,518.85
Total freight revenues not reported
on petitioner's 1952 Federal in-
come tax return
$105,918.86 These freight revenues of $105,918.86 were included in the income reported in petitioner's 1953 Federal income tax return. Rudolph Tripple, (sometimes hereinafter referred to as Tripple) assistant secretarytreasurer of petitioner in 1952 and 1953, prepared petitioner's income tax returns for those years. Tripple died on June 9, 1955. On Saturday, June 8, 1957, a fire completely demolished petitioner's general office building at 802 South 14th Street, Omaha, Nebraska. All accounting control and subsidiary records used in the preparation of petitioner's 1952 and 1953 Federal income tax returns were contained therein and were completely destroyed. During 1954 petitioner employed Price, Waterhouse and Company (sometimes hereinafter referred to as Price, Waterhouse) *81 to audit its books and records from 1951 through September 30, 1954. An audit examination was made in accordance with generally accepted auditing standards. Prior to the years here involved, it was petitioner's established practice to record operating revenues when goods were received for shipment at one of the terminals, although expenses related to these items would not be incurred until some later date. When petitioner received a shipment at a terminal, a freight bill was prepared with eight copies. Every day each terminal mailed a copy of all freight bills issued during the day to petitioner's general office. A detailed record of all terminal freight bills, by number, was maintained in the general office. All numbers were accounted for in the general office IBM department. The IBM department recorded on an IBM card the numerical information contained on the copies of the freight bills received from the terminal offices. A tabulation was prepared of batches of each terminal's freight bills in numerical sequence. At the end of the month, a total was prepared of all batches, which total equaled the total new revenue for the month. Each month the terminals reported their last number *82 used on the last day of the month. All numbers thereafter were considered to be the following month's business. During the course of the 1954 audit of petitioner's books and records, Price, Waterhouse determined that the general office IBM department had cut off the recording of receivables and revenue for the year 1952 on December 25, 1952. All freight bills dated December 26 through December 31, 1952, were considered January 1953 business by the IBM department. Price, Waterhouse ascertained how the December 26, 1952, cutoff had been made, by tracing numerous items entered on the cash book between December 26 and December 31, 1952, to the December 31, 1952, IBM list of outstanding accounts receivable. In addition, they tested several cash receipts entered in the cash book prior to December 26, 1952, to ascertain that those items had been included by the IBM department in December 1952 business. Price, Waterhouse partially adjusted the new business between December 26 and December 31, 1952, in the net amount of $105,918.86, for the amount of the business not recorded in 1952 by the petitioner having determined that this amount should have been recorded as December 1952 business rather *83 than as January 1953 business. Price, Waterhouse adjusted petitioner's net income shown on its books for the year 1953 by adding to 1952 income the sum of $105,918.86 and decreasing 1953 income shown on its books by a similar amount. In connection with an audit of petitioner's 1952 and 1953 Federal income tax returns, an internal revenue agent inspected the audit workpapers prepared by Price, Waterhouse, and made the same $105,918.86 adjustment for income tax purposes as they had made to petitioner's books and records. Petitioner's officers and personnel with whom the revenue agent discussed this adjustment did not represent to him that this item represented deferred income. In its 1953 income tax return, petitioner excluded the sum of $187,553.51 from taxable income, as representing income on freight shipments not yet completed on December 31, 1953. This amount was recorded on petitioner's books and records in its December 1953 freight revenues. Line 21 of Schedule M of petitioner's 1953 income tax return reads as follows: "21. Charges against surplus re-
serves deducted from income
in the return
$411,972.85
(attach schedule)
187,553.51" A schedule pertaining *84 to the $187,553.51 was not attached to petitioner's 1953 income tax return. The computation of this amount was not furnished to the revenue agent by Tripple or by any of the other officers from whom he requested it. During the course of their audit of petitioner's books and records, Price, Waterhouse considered petitioner's procedures regarding the recording of freight revenues. They determined that the company had made no effort to defer the recording of such income or to estimate and record the expenses which would be incurred in performing services in relation to such income. In considering the petitioner's procedures regarding the recording of freight revenues, Price, Waterhouse determined that the Interstate Commerce Commission rules and regulations contained no specific instructions relating to the recording of freight revenue and stated under the account "Operating Revenues" only that the account should include the total operating revenues derived by the carrier from its motor carrier operations. The $187,553.51 excluded from taxable income on line 21, Schedule M, of petitioner's 1953 Federal income tax return was not reported as taxable income by petitioner on its 1954 *85 Federal income tax return. Petitioner did not request permission from the Commissioner of Internal Revenue to change its method of accounting for the years 1952 or 1953. Petitioner understated its net income for 1952 and 1953 in the amounts of $105,918.86 and $81,634.65, respectively, representing freight revenues accrued on its books and records, but not reported as income, in those years. Opinion Petitioner contends that its treatment of freight revenues in 1952 and 1953 was an insubstantial correction of prior years' reporting of uncompleted year-end shipments. Respondent contends that petitioner deviated from its prior consistent treatment of freight and erroneously omitted the year-end shipments from income. Respondent attributes the non-inclusion to an arbitrary cutoff date used by petitioner's IBM department and alternatively contends that petitioner changed its accounting method without consent. We agree with respondent's primary contention. Section 41 of the 1939 Code [1] requires that a taxpayer's net income be computed in accordance with the method of accounting regularly employed by the taxpayer in keeping its books. Section 42 of the 1939 Code [2] provides that *86 all items of gross income are to be included in gross income under the method permitted by section 41. Petitioner did not report in its 1952 gross income freight revenues of $105,918.86 which related to the period between December 26 and December 31, 1952. In the taxable years prior to 1952, petitioner consistently reported freight revenues as income when a shipment was received at a terminal for delivery. A key factor in reporting income is consistency. , affd. per curiam *87 (C.A. 2, 1957); . In the instant case petitioner has treated its freight revenues in a manner inconsistent with prior years' reporting. In attempting to justify this departure petitioner contends that the non-inclusion of these items represented a deferral of income for shipments which were not completed by the end of the year, and that such deferral was consonant with the proper accounting treatment for an accrual basis taxpayer. This contention is not supported by the record before us; nor has the petitioner directed our attention to any accounting authority in support thereof. Petitioner's accounting control and subsidiary records for 1952 and 1953 were destroyed by a fire in 1957. Its comptroller, Tripple, who supervised the preparation of its 1952 and 1953 Federal income tax returns, died in 1955. Benedict Schafer, who was Tripple's assistant in the years in question, was unable to testify except in the most general terms and solely on the basis of company practices as to what the amounts excluded from income in 1952 and 1953 represented. He did not know the details of how these amounts were computed or which documents *88 underlay the computations. Furthermore, none of the other officers or individuals connected with petitioner's operations suggested that a deferral of unearned freight revenues was involved, until the trial of this case. From the facts before us it appears quite likely that the reporting of the 1952 freight revenues was altered to exclude December 26 through 31 shipments because of an arbitrary cutoff date selected by petitioner's IBM department, as contended by respondent. The audit report made by Price, Waterhouse so states, and the figures reported by petitioner were carefully checked by Price, Waterhouse to verify this conclusion. During 1953 petitioner recorded freight revenues on its books on the day that a shipment was received for delivery. On its 1953 Federal income tax return, however, petitioner eliminated $187,553.51 from income. Respondent determined that this sum represented income properly accruable in 1953 and increased petitioner's 1953 income from freight income in the amount of $81,634.65 ($187,553.51 less the $105,918.86 which respondent determined were freight revenues properly accruable in 1952, although reported by petitioner in 1953). Petitioner contends that *89 the $187,553.51 was not properly accruable in 1953 because it represented shipments not yet completed by December 31, 1953. We agree with respondent. As referred to above, section 41 of the 1939 Code provides, in part, that "The net income shall be computed * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer." Section 39.41-1, Regs. 118, provides, in part, that: If the method of accounting regularly employed by him in keeping his books clearly reflects his income, it is to be followed with respect to the time as of which items of gross income and deductions are to be accounted for. * * * Petitioner's books for 1953, as in prior years, included freight revenues for shipments not completed at the end of the year. Price, Waterhouse, in computing petitioner's estimated Federal income tax for 1953, added back the $187,553.51 which petitioner had not included on its return. Petitioner failed to include this amount in its 1954 income tax return, further contradicting its claim that the elimination of this item from its 1953 income represented a deferral of unearned income. Since petitioner has not shown that reporting the $187,553.51 *90 in 1953, in conformity with the manner in which it kept its books, would not clearly reflect income, we sustain respondent's determination. We do not reach the question of whether this case is controlled by our decision in , as urged by petitioner, or by its reversal (C.A. 2, 1963), and such cases as Wright Contracting Co. , affd. (C.A. 5, 1963), and (C.A. 3, 1961), reversing a Memorandum Opinion of this Court. Petitioner has failed completely to present adequate proof to corroborate its contention that in either 1952 or 1953 it was merely correcting an error in prior reporting. To reflect concessions made by both parties, Decision will be entered under Rule 50. Footnotes
1. SEC. 41. GENERAL RULE. The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; * * * ↩
2. SEC. 42. PERIOD IN WHICH ITEMS OF GROSS INCOME INCLUDED. (a) General Rule. - The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. * * *↩